**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **CONGRUENT MEDIA RESOURCING LLC,** | C.A. No. 2:25-cv-01121 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **PALO ALTO NETWORKS, INC.,** | **PATENT CASE** |
| Defendant. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Congruent Media Resourcing LLC files this Original Complaint for Patent Infringement against Palo Alto Networks, Inc. and would respectfully show the Court as follows:

## I.  THE PARTIES

1.     Plaintiff Congruent Media Resourcing LLC ("Plaintiff") is a Texas limited liability company with a principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2.     On information and belief, Defendant Palo Alto Networks, Inc. ("Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 3901 North Dallas Parkway, Plano, Texas 75093. Defendant has a registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II.  JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 3901 North Dallas Parkway, Plano, Texas 75093.

5.    Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.   In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.   Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Texas and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Texas and this District.   Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.    Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 3901 North Dallas Parkway, Plano, Texas 75093.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.   UNITED STATES PATENT NO. 9,135,418

8.    Plaintiff incorporates the above paragraphs herein by reference.

9.    On September 15, 2015, United States Patent No. 9,135,418 ("the '418 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '418 Patent is

titled "System and Method for Creating Secure Applications."  A true and correct copy of the '418 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10.    Congruent Media Resourcing LLC is the assignee of all right, title, and interest in the '418 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '418 Patent.  Accordingly, Congruent Media Resourcing LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '418 Patent by Defendant.

11.    The invention in the '418 Patent relates to systems and methods for creating secure workspaces and applications, including the management and enhancement of same. (Ex. 1 at 1:16-19).  The goal of the '418 Patent is to reduce security breaches by creating secure workspaces and applications.  (*Id.* at 1:16-38).  To do this, the '418 Patent discloses imposing one or more intercepts that convert an unsecured target application to a secure application. (*Id.* at 1:54-57).  An intercept may be considered as an actual replacement of existing instruction or a new instruction that may interrupt program flow and conditionally return control to the program flow.  (*Id.* at 1:66-2:3).  By adding an intercept, the behavior of the secure application can be different from the original behavior of the target application.  (*Id.* at 1:57-61).

12.    The '418 Patent further explains that when the intercept is added to the targeted application, the now secure application can be repackaged with the bound intercepts integrated with the original file.  (*Id.* at 2:4-6).  As a result of the repackaging, the intercepts may be physically inseparable from the original files following the repackaging of the secure application, which can result in an immutable deployable entity.  (*Id.* at 2:7-10).  This feature can prevent the secure application from having the intercepts removed by an authorized party.  (*Id.* at 2:10-11).

13.    In addition, generating the secure application can preserve the operating system interactions that were originally defined for the target application and the operating system for which the target application was designed.  (*Id.* at 2:11-15).  Preserving the operating system interactions can ensure that the secure application, even with the modifications to secure it, will continue to work with its intended operating system and that original behavior that was designed into the target application may still be permitted to be performed with the secure application in keeping with the scope of any acquired policy enforcement mechanism.  (*Id.* at 2:15-21).

14.    The '418 patent provides details regarding how application securitization occurs. Specifically, it discloses that one way application wrapping may occur is via an automated process in which no source code is modified, thereby reducing programmer oversight and errors.  (*Id.* at 12:19-26).  Additionally, the '418 patent provides examples of this, including 1) replacing references to system services with references to a library that applies the necessary mechanisms and policies and 2) inserting secure references into the code of an application to replace non secure references.  (*Id.* at 12:24-35).  Specifically, this securitization process may include interposing system API calls to allow a secure framework to intercept and control application functions.  (*Id.* at 21:43-49).  This process may further include encryption for additional protection of applications. (*Id.* at 21:49-58).  One major benefit may be that management layers may be injected onto the compiled applications, removing the need for source code or developer implemented application changes.  (*Id.* at 12:36-47).

15.    The '418 patent also discloses technical examples of the use of securing applications via an intercept.  One example method is called byte code injection, which replacing byte code API calls with intercepts.  (*Id.* at 22:45-51). This is particularly useful for applications formatted for the Android operating system.  (*Id.*; *also* Figure 11; 23:45-60).  Another disclosed

technical method is to link replacement calls for native object code. (*Id.* at 22:51-57). This method is useful for applications that use native code and do not run under a virtual machine. (*Id.*). An example of this type of injection is link injection, which replaces preexisting system calls or the inclusion of new instructions in an immutable entity. (*Id.* at 24:64-25:24). The '418 Patent further discloses that linking order may be statically or dynamically linked, and that priority can be established during runtime. (*Id.* at 25:6-17). Finally, a system of obfuscation may prevent further modification or reversal of the securitization process. (*Id.* at 25:15-17).

16.     The '418 patent further discusses the technical benefits of repackaging the target application during a reconstruction phase. (*Id.* at 24:3-21). This is performed by a repackager. (*Id.* at 3-7). The repackager may be made of software or hardware elements and may be further modified by secure object references injected before. (*Id.* at 24:7-9). In addition, this reconstructed and modified application may need a new certificate to be trusted. (*Id.* at 24:11-16).

## **Asserted Claim**

17.     Claim 9 of the '418 Patent claims:

A method of generating a secure application, comprising:

via a processor:

receiving a target application that is designed to interact with an operating system;

configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system; and

repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.

## IV.  <u>COUNT I</u>
## <u>(PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,135,418)</u>

18.    Upon information and belief, Defendant has directly infringed claim 9 of the '418 Patent in Texas, in this District, and elsewhere in the United States, by using and performing the claimed method by using the Palo Alto Networks Prisma Cloud Defender ("Accused Instrumentality").

19.    **<u>Direct Infringement</u>**. As explained below, Palo Alto Networks Prisma Cloud Defender is a method of generating a secure application.  Palo Alto Networks Prisma Cloud Defender leverages Runtime Application Self-Protection ("RASP") technology to protect applications.



(*E.g.*, https://www.paloaltonetworks.com/prisma/cloud).

PRESS RELEASE

# Palo Alto Networks Introduces Prisma: The Secure Way to Cloud

May 29, 2019

**The Industry's Most Complete and Comprehensive Cloud Security Suite**

SANTA CLARA, Calif., May 29, 2019 /PRNewswire/ -- Palo Alto Networks (NYSE: PANW) today announced **Prisma**™, a new cloud security suite designed to help its customers lead a more secure digital life. The world needs cloud security that is simpler, more secure, and more complete than ever before. It's the new benchmark in cloud security, transforming the cloud journey by simplifying access, data protection, and application security. Prisma builds on the tremendous success of Palo Alto Networks cloud security products and delivers new experiences only possible with the Prisma suite. With approximately 9,000 enterprise customers, Prisma has quickly become the largest cloud security business in the world.

(*E.g.*, https://www.paloaltonetworks.com/company/press/2019/palo-alto-networks-introduces-prisma--the-secure-way-to-cloud).

20.     Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) performs the step of receiving a target application that is designed to interact with an operating system.  As explained below, the Application Security is designed to be integrated into a target application without modifying development code.  The target application with which Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) is used interacts with the host operating system at the process and kernel interface level, for example, using OS facilities such as process memory, threads, file I/O, and networking.  Prisma Cloud Defender is used to convert a target application to a secure application. Palo Alto Networks' Prisma Cloud Defender is the component within Prisma Cloud that secures an environment. Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) receives a target application for the purpose of converting a target application to a secure application.



(*E.g.*, https://www.paloaltonetworks.com/prisma/cloud).



(*E.g.*, https://docs.prismacloud.io/en/enterprise-edition/use-cases).



(*E.g.*, https://pan.dev/prisma-cloud/docs/cwpp/deploy-defenders/).

21.     Palo Alto Networks' Prisma Cloud performs the step of configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system.  Palo Alto Networks' Prisma Cloud has two Defender types: App-embedded and Serverless.  The purpose of the Defender is to convert a target application into a secure application.  Because Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) runs in-process, Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) uses the application's process memory, threads, file I/O, and networking stacks, and OS-mediated operations.  The capabilities and deployment steps of the Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) depend on the underlying operating system and supported platforms because it uses OS-specific interfaces and integrations and therefore maintains the secure application interacting with the operating system. To deploy Prisma Cloud Defender, a multi-step process is used to convert

the target application to a secure application.  For example, Prisma Cloud Defender includes

embedding a Defender via the "App embedded" Defender type.





(*E.g.*, https://pan.dev/prisma-cloud/docs/cwpp/deploy-defenders/).

22.     Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) performs the step of repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.  Upon information and belief, protecting deployed apps prevents vulnerabilities in a way such that the intercepts are inseparable from the secure application.  For example, Palo Alto Networks' Prisma Cloud (Prisma Cloud Defender) protects deployed apps by repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable. For example, Prisma Cloud Defender secures an application by "embedding a Defender into the workloads." For an App-embedded Defender, deployment includes modifying code such that the application is secure. Prisma Cloud includes instructions for three such different types of deployments. Prisma Cloud Defender's deployment results in a secure application that is inseparable from a target application.

For example, deploying an App Embedded Defender causes it to be embedded inside the container. This modifies the container's entry point.

## Deploy App-embedded Defender

Secure your workloads, tasks (apps) by embedding a Defender into the workloads.

### Manual Deployment:

Use this deployment when you want to secure all tasks (apps) or workloads in a cloud container irrespective of whether the containers are self-managed, Amazon ECS managed, or docker managed.

1. Download the App Embedded Defender bundle by using the App Embedded Defender [API] endpoint:

```
$ curl -sSL -k --header "authorization: Bearer <key>" https://<CONSOLE>/api/v<VERSION>/images/twistlock_defender_app_emb
```

2. Set the following environment variables:

- ENV DEFENDER_TYPE="appEmbedded"
- ENV DEFENDER_APP_ID="unique identifier of your application"
- ENV FILESYSTEM_MONITORING="false"
- ENV WS_ADDRESS="wss://us-west1.cloud.twistlock.com:443"
- ENV DATA_FOLDER="absolute path to a writable folder"
- ENV INSTALL_BUNDLE="key"

3. Extract Defender to a data folder.

```
ADD twistlock_defender_app_embedded.tar.gz <DATA_FOLDER>
```

4. Modify the run command or entrypoint such that your app command is an argument to Defender.

```
<DATA_FOLDER>/defender app-embedded /path/to/your/app --arg1 value1 --arg2 value2
```

(*E.g.*, https://pan.dev/prisma-cloud/docs/cwpp/deploy-defenders/).

**Automatic Deployment:**

Choose your template for deployment based on whether you wish to secure applications (or tasks) in Amazon ECS managed stack running containers or in docker managed containers.

**Native template:**

Use this cURL sample request to protect a Amazon ECS Fargate task definition in native format.

- Generate a protected task definition using the Defender Fargate API endpoint:

```
$ curl -k \
  -u <USER> \
  -H 'Content-Type: application/json' \
  -X POST \
  --data-binary "@unprotected.json" \
  --output protected.json \
  "https://<CONSOLE>/api/v<VERSION>/defenders/fargate.json?consoleaddr=<HOSTNAME>&defenderType=appEmbedded"
```

**CloudFormation template (in JSON):**

Use this cURL sample request to protect a Amazon ECS Fargate task definition in CloudFormation template in JSON.

- Generate a protected template using the Defender Fargate API endpoint:

```
$ curl -k \
  -u <USER> \
  -H 'Content-Type: application/json' \
  -X POST \
  --data-binary "@unprotected.json" \
  --output protected.json \
  "https://<CONSOLE>/api/v<VERSION>/defenders/fargate.json?cloudFormation=true&consoleaddr=<console_address>&filestemMonit
```

(*E.g.*, https://pan.dev/prisma-cloud/docs/cwpp/deploy-defenders/).

**CloudFormation template (in YAML):**

Use this cURL sample request to protect a Amazon ECS Fargate task definition in CloudFormation template in YAML.

- Generate a protected template using the Defender Fargate `API` endpoint.

```
$ curl -k \
  -u <USER> \
  -H 'Content-Type: application/yaml' \
  -X POST \
  --data-binary "@unprotected.yaml"
  --output protected.yaml \
  "https://<CONSOLE>/api/v<VERSION>/defenders/fargate.yaml?cloudFormation=true&consoleaddr=<console_address>&filesystemMonit
```

## Dockerfile Deployment:

Use this deployment when you want to secure applications (or tasks) in docker managed containers.

1. Deploy using the App Embedded Defender `API` endpoint.

2. Enter or assign values for the following mandatory fields in the cURL example below:

   - appID: ID of the application.
   - dataFolder: Path to the data folder
   - Dockerfile: Path to the docker file

3. Generate the docker file.

```
$ curl -k \
  -u <USER> \
  -H 'Content-Type: application/json' \
  -X POST \
  -d \
  '{
      "appID": "my-app",
      "consoleAddr": "https://localhost",
      "dataFolder": "/var/lib/docker/containers/twistlock/tmp",
      "dockerfile": "/var/lib/docker/overlay2/18e8cf48"
  }' \
  "https://<CONSOLE>/api/v<VERSION>/defenders/app-embedded"
```

(*E.g.*, https://pan.dev/prisma-cloud/docs/cwpp/deploy-defenders/).

**App ID**

When you deploy an App-Embedded Defender, it is embedded inside the container. The embed process modifies the container's entrypoint to run App-Embedded Defender first, which in turn starts the original entrypoint program.

When App-Embedded Defender sends scan data back to Console, it must correlate it to an image. Because App-Embedded Defender runs inside the container, it can't retrieve any information about the image, specifically the image name and image ID. As such, the deployment flow sets an image name and image ID, and embeds this information alongside the App-Embedded Defender.

During the embed flow, you must specify a value for App ID (or more accurately, app name, which becomes part of the final App ID). In the Console, this value is presented as the image name. When specifying App ID, choose a value you can easily trace back to the image when reviewing and mitigating security findings.

As part of the embed flow, Prisma Cloud automatically generates a universally unique identifier (UUID) to represent the image ID. The image ID is a primary key in the Prisma Cloud Compute database, so it's essential that it is defined.

Together, the app name plus the generated UUID form the final App ID. The final App ID has the following format:

(*E.g.*, https://docs.prismacloud.io/en/enterprise-edition/content-collections/runtime-security/install/deploy-defender/app-embedded/app-embedded).

23.    **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claim 9 of the '418 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed claim 9 of the '418 Patent. For example, Defendant provided marketing material and videos advertising that the Accused Instrumentality performs the claimed method of generating a secure application from a target application designed to interact with an operating system as claimed in claim 9 of the '418 Patent. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).

24.    On information and belief, since Defendant became aware of the '418 patent and the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).  Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '418 Patent by its customers.

25.    On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '418 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶19-22 (identifying

marketing materials and videos)).  As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '418 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least claim 9 of the '418 Patent, Defendant knew that each such new use was made and adapted for infringement of claim 9 of the '418 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).  Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use.  (*Id.*).

26.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '418 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

27.    Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '418 Patent, Plaintiff will be greatly and irreparably harmed.

28.    Plaintiff is only asserting a method claim and as such the marking requirements of 35 U.S.C. 287(a) do not apply. *Crown Packaging Technology, Inc. v. Rexam, Beverage Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of

the '839 patent, the marking requirement of 35 U.S.C. 287(a) does not apply."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed.Cir. 1983) ("It is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method." (*Quoting Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)). Plaintiff has therefore complied with the marking requirements 35 U.S.C. 287(a).

## V.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that claim 9 of United States Patent No. 9,135,418 has been infringed and is being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c.    That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d.    That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

November 13, 2025                    DIRECTION IP LAW

                                    */s/David R. Bennett*
                                    David R. Bennett (IL Bar No.: 6244214)

Steven G. Kalberg (IL Bar No.: 6336131)
PO Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Attorneys for Plaintiff*
*Congruent Media Resourcing LLC*